## RICHARDS *versus* HAZZARD.

An issue in fact, involving a question of fraud, is proper to be determined by a jury, but where an issue in law arises; as where the validity of a deed or contract is drawn in question, it is the province of the Court to pronounce a decision, if fraud is apparent on the face of the deed or contract, or follows from the facts of the case presented.

Though a debtor in failing circumstances may by an assignment of his estate, in trust, and in good faith, prefer one creditor to another; yet, if such assign ment be made without the consent of his creditors, and reserves to the debtor a portion of his property for the support of himself; and be otherwise arbi-trary and unjust to the creditors generally : it will be declared fraudulent in the whole, and the favored creditor will not be allowed to avail himself of any benefit under the assignment.

An assignment made by an insolvent debtor of his estate, appropriating to himself, without the approbation of his creditors, a certain amount for his own support, is fraudulent and void.

In error from Mobile Circuit Court.

In this case John B. Hazzard, Cashier of the Tombecbee Bank, had levied an attachment on the estate of Daniel Stowe, and summoned Richards as guarnishee, to answer what money, goods or effects, &c. of Stowe, he had in possession.

Richards answered, admitting that he was indebt-ed to Stowe, but stated that before service of the gar-nishment, he had received notice of an assignment, made by Stowe, in trust, for his creditors; and pray-ed the judgment of the Court as to the validity of the assignment.

Under the deed of assignment referred to in the answer of Richards, Stowe had assigned his estate, both real and personal to James T. Franklin, in trust, for the benefit of certain creditors, reserving to himself the sum of two thousand dollars per annum for the support of himself and family, during the con-tinuance of the trust. The deed contained a provi-

sion appropriating the residue of the estate, after complying with the above named objects, to the payment of the creditors of Stowe, generally ; but Hazzard, with other creditors, were unprovided for in the assignment. The Court with the consent of the parties, rendered a decision *pro forma*, and gave judgment against Richards on the garnishment, declaring the deed void in law.

To reverse this judgment three grounds of error were assigned in this Court, to wit:

1. That fraud, consisting in intention, could not be infered from the face of the deed without the intervention of a jury.

2. That the deed was not void, as being neither fraudulent in law nor fact.

3.. That admitting the deed to have been void as to the reservation, it was valid as to the balance.

*Goldthwaite,*for plaintiff----The question here arises, whether the Court can declare the deed void on its face, without a jury; or, in other words, if no circumstance could be shewn to sustain it. If the deed in this case is void, it must be so under the statute of frauds.—*Toul. Dig.* 244.

I contend that under a correct construction of the statute, a Court of Law, simply, is incompetent to decide a deed void. It is the intent of malice, guile, &c. which vitiates a deed, and this intent can only be ascertained by a jury. A Court cannot of itself decide or divine what the intentions of a man are, from any one act. The law in such a case might presume, but it is mere presumption, and may be rebutted. Can nothing of mistake or accident be shewn? Else why the necessity of a jury? Is it

not for this that our jury system is formed—that by them the *intentions* of a man may be ascertained and visited on his acts? This position can be explained by our criminal law. The law says, that from a fact, fraud is presumed; but is it not presumption without proof? Now I may shoot another, and malice would be presumed; but is the act not open to be rebutted? The act and the intention are two: one may exist without the other—both must concur, otherwise the act cannot be punished. So our statute. If a man does an act by a fraudulent *intent*, it is void—and suppose it to be *prima facie* void, does this forbid every proof that it is otherwise than it appears to be? If so we must abandon all research, and carry ourselves back to the times of Lord *Mansfield* as to *libels.* The Courts then interposed against the rights of juries, but those times are gone.

Here we admit the act committed, for argument sake, but deny that the Court could judge of our intent. But look to the authorities: the case of *Edwards* vs. *Harbin,* 2 *Term. R.* 587, was the first establishing fraud in law.

Suppose in this case the person who signed the deed had done so by mistake? Suppose he had it in his power to satisfy a jury that no possibility of fraud existed; would he be precluded from showing this, and be thus deprived of his right to be heard? Here the decision is from one single fact, unaccompanied by others. In the case above cited, the Court commented on the act *found already by a jury,* and thus the precedent has grown up from a case distinguished by peculiar circumstances.

A case in 5 *Tenn. R.* 420, is still stronger than ours. The Courts in trying those causes, had all

the circumstances before them, and did not decide, as in this case, on one single fact, growing out of the deed alone. In the last case refered to, the facts were evidently left to a jury, and both parties went into evidence of facts and circumstances. This case occurred but a few years before Edwards and Harbin—it was a case of importance, and the doctrine of fraud *per se* was not hinted at. Evidence was received, and it was combated on the proof. So, despite *Buller's* opinion in Edwards and Harbin, there never was a decision before the last case.

In the case last cited, the Court say, it was a fact to be submitted to the jury, to determine the intent of the parties.

Now take any fact bearing the most palpable presumptions, and can not it be explained away? Take the fact of *killing*, the strongest case known to the law—yet no matter under what circumstances committed, it is still the subject of explanation. We can not, in the nature of things, suppose any one fact so potent, that it cannot be met by others. Therefore we say in fraud *per se*, the intent must be proved, and in that proof we are entitled to have all circumstances heard. In what does fraud consist, if not in intention? Can not an act be fraudulent not apparently so? and can not one apparently so, be not so in fact? In law there is nothing incapable of demonstration. Fraud is always a mixed question. The jury can find from the facts and the Court must give the rule. But fraud surely can never be determined absolutely by the Court from one single fact.

The case in 4 *East.* 1, is put on the ground of intention, by the judge delivering the opinion, and

the authorities I have mentioned shew the English doctrine, except where great mercantile interests arise. Then the rule would necessarily vary, because their situation requires it, but surely in this country where no such necessity exists, the principle will not be entailed. In New-York, it is only of late that in a continued struggle with the commercial interests of that State, the Courts seem to have yielded to the position contended for against us.

5 *Cranch* 351—2 *Har. & Johns.* 292—2 *N. Hampshire Rep.* 13—3 *Marshall* 241—as to how far a Court can infer fraud. The last case is in direct opposition, and conflicts with Edwards and Harbin.

An absolute bill of sale on its face may show no fraud, but it is a traversable fact, and may appear in explanation—2 *Bibb* 416. There is no authority at Common Law, where fraud is by the Court presumed and established. Even on a special verdict, setting out facts, judgment can not be rendered by the Court, as for instance a special verdict of killing—the law implies murder, but would not they remand the cause to try the question of intent?—*Brannan* vs. *Oliver*, 2 *Stewart* 51—*Hobbs* vs. *Bibb*, 2 *Stewart* 54, covers the whole ground occupied in this case. It must be admitted that before the fraud can arise, facts *de hors* must be shewn in all the cases. Now none of the facts appear in the case under consideration. Here if there be enough to pay off all the creditors, no body is injured. Therefore there can be no fraud. The opinion in the last case cited, uses the strongest language in a case precisely similar to ours. The same principle is decided in *Toulmin* vs. *Buchanan's exr's*, 1 *Stewart* 67, also in 15 *Johns.* 571.

In New-York, the decisions have always been the

same way, until very lately. Can a difference be drawn between the case just cited, and the one before the Court, except in favor of the latter? In a still later case, in 20 *Johns.* 442, the same principle is again sustained. There the Court decided the deed void on the ground of its *proviso ;* but they do not even there go the length to say it is fraudulent *per se.* They only say "it bears the badge of fraud which may be presumed by the jury."—2 *Kent's Com.* 422–5 *Cowan* 449.

An authority in 2 *Pick.* 129, will be relied on by the other side :. without admitting this case as law, it is a persuasive argument; but the facts are different from ours. It appeared there on the face of the deed, that the debtor was insolvent. Here it does not. Again—in that case it was contended that the deed was void, because of the amount of property conveyed. Here, it does not appear but that there may be sufficient to pay off every debt. Suppose we owe three hundred dollars, each, to three individuals, and assign one thousand dollars, reserving one hundred, would that be fraudulent?—3 *Dessaussure's R.* 4—4 *ibidem,* 300.

*Gordon, contra.*—There is a material difference between this case, and causes decided on the deed. Here, the Court determined on a case agreed. The bare deed was not presented to the Court, but the *facts* were agreed on, and the cause submitted for decision. If there had been any other facts of importance to the party, why did he not submit them? On cases agreed, the Court are to decide as a jury would, and to draw the same conclusions.

In the deed under consideration, it is provided, that

after paying certain creditors, there shall be a division *pari passu*, &c. It is implied that there is an insufficiency by the very terms of the deed itself.

The facts in the case are few and simple, and on them alone the Court are to decide. The party did not rely on any other facts than those agreed, and the presumption is, that any other did not exist. The question is, does the reservation in the deed, in favor of the grantor, render it void on its face. Deeds containing such reservations have invariably been discouraged. In England, the bankrupt law prohibits them. In New Jersey they are prohibited by statute. In New York there is a great current of decisions against them, and the highest tribunals have decided them to be void. In fact, all decisions on the subject both in England and in the United States, are against them.

Deeds will be rarely found to be fraudulent, on their face, and therefore, Courts search for other facts; and if both parties intended fraud, and so expressed it on the face of the deed, would the Court refuse to declare it fraudulent? The Court in such a case would have no other alternative than to declare it void. In the case cited from *Cranch*, the Court say, *if intention had appeared, they would have declared it void.* So the case of Hobbs and Bibb, and Buchannan and Toulmin.

It is said that this case should have gone to a jury. Why? It was a *case agreed.* What fact *aliunde* could Stowe have shewn to a jury? They had agreed to the only facts to be shown. Those facts show the deed; and the deed, that Stowe had assigned property, (reserving to himself two thousand dollars per annum) to favored creditors. There, it was

a contrivance to defeat and delay the balance of his creditors, and the simple question arose, was it void? Was it fraudulent? The deed shews itself to be collusive. Would any testimony, (admitting it could be produced to vary the facts agreed,) change the evident object and construction of the deed?

I admit that fraud some times consists in intention. Is it right that a debtor should hold property under his own control, and for his own benefit—Is it honest —just—proper? If not, here we have the *intention.* Supposing the preferred creditor to be willing, is he not aiding the collusion? *Kent,* in the 2d volume of his Commentaries, after reviewing all the leading authorities on this point, declares such deeds void— and there can be no difference in this respect between cases at law and in equity, only that in one case the Judge has facts, and in the other not. But in a case agreed, all the distinction is lost. In the case of *Hyslop* vs. *Clarke,* the Court held the deed void, because resulting back to the grantor. It was void on its face, and so adjudged.

If a deed be void in part, when made contrary to statute, it is void in the whole.

In *Murray* vs. *Riggs,* it was held that the deed was void only as to the reservation, and that creditors could reach the reserved part in equity ; but this case was determined on its own peculiar circumstances, and has not the unanimous opinion of the Court of errors and appeals.

*Mackie* vs. *Carns,* 1 *Hopk.* 372, decides a case on a deed precisely similar to the one now before the Court. The deed was decided to be void, not only as to the reservation, but *in toto.*

The case in 2 *Pickering* 129, is much in point, in which it is laid down that if a defect appears on the face of a deed, it is matter of law, and it is useless to refer it to a jury.    In 2 *Sergeant & Rawle*, 198, the reservation was not put in the deed, but was found by the jury, and upon that finding the Court said it made the deed void.

*Acre*, on the same side, said, that this case did not demand a laborious investigation.  The sole question to be examined is, whether the deed be void or valid at law ?    It is new and important, and we shall test it—first, by the statute of frauds ; second, by reason ; and thirdly, by authority.

1.  By the statute of frauds, (*Dig.* 244) it is immaterial whether there be intent to defraud or not ; if it has that effect the deed is void, because it hinders and delays creditors.    The case in 14 *Johns.* 458, is similar to ours, and it is cited to meet part of the argument as to the necessity of a jury when the law pronounces it void.   The act shows the intent, and then it becomes a matter of law.   The case in 1 *Hopkins' C. R.* 395, contains the best reasoning that can be adduced on this subject ; and the Supreme Court of Virginia has determined that a deed declared void in part by statute, is void *in toto*—4 *Rand.* 301.

Let us apply the doctrine : from the statute it is to be inferred, that if its effect is to injure and defraud, the intent is immaterial.   The act does effect a delay and hindrance of creditors, and it comes clearly within the statute.    It is said that it does not matter how injurious the act was if it was sanctioned by an innocent intention.   It is true that this is the rule in criminal law, but it cannot apply to a civil case.

There the intent is punished, but in civil cases the act is punished on account of the injury it does—not so much to deter others, as in criminal cases, but to make reparation, which can not be done in criminal cases. When the act of the Legislature demands only a fact, the Court can pronounce on that authority; but common sense tells us that the act is sufficient, and that the intention is immaterial. But the Court, even if necessary, could easily determine the intention from the record. It is only the injury of the act of which we complain, and it is immaterial what was the intention. The case from *Hopkins* was taken up to the Superior Court of errors and appeals. The decision was attacked, but it was sustained by the Court, which was composed of some of the ablest lawyers, as their opinions and reasoning will shew; and authorities have no force, unless supported by reason.—2 *Kent's Com.*

We know that here the Court are bound down by no decision, but they will look into the decisions of other Courts and authorities, as evidence only, what the law should be. This question has always been decided the same way—in fact, all the decisions produced, sustain us. 3 *Marshall* 241 does so, and also supports a different principle than the one for which it is cited. This is similar to a demurrer to evidence, and the Court will intend all that a jury could lawfully presume. What does appear from the facts? Does he not say that he conveys every thing that he has? We will not be sent to a foreign country to seek for his property out of the jurisdiction of our Courts. Our Courts will not demand it. The Courts will never suffer a party to revel in luxury and wealth, when the creditors are suffering. A jury

then would infer that it was with intent to delay creditors, and therefore this Court will now determine it likewise.

*Hitchcock*, in conclusion.

CRENSHAW, J.—In this case it appears that Daniel Stowe made an assignment of all his lands in Alabama, and of all his personal estate, to James T. Franklin, in trust, to pay certain preferred creditors in the first instance, and then the residue, if any, to pay his other creditors generally, reserving to himself the right of receiving from the trustee, during the continuance of the trust, a sum not exceeding two thousand dollars per annum, for the support of himself and family.

Some time after the making of the deed of trust, John B. Hazzard, cashier of the Tombecbee Bank, levied an attachment on the estate of Stowe, and summoned Wm. S. Richards as garnishee. On the return of the attachment, Richards admitted that he was indebted to Stowe, but further stated in his answer, that before service of the garnishment he had received notice of the assignment, and that Hazzard, the plaintiff, was a creditor not provided for in the deed of trust, and that there were other creditors for whom no provisions had been made; and concluded his answer by praying judgment on the validity of the deed of trust.

By consent of parties, and *pro forma*, the Court decided that the deed was void in law, and gave judgment against Richards the garnishee. The correctness of this judgment is now called in question.

In the argument of the case, three propositions were taken and mainly relied on, in behalf of the plaintiff in error.

1. That fraud consisted in intention, and could not be inferred from the face of the deed without the intervention of a jury.

2. That the deed was not void, there being no fraud in law, or in fact.

3. That if void as to the reservation, it was good as to the balance.

As to the first proposition, whether the question of fraud is to be determined by the judge or by the jury, depends entirely upon the state of the pleadings.

If an issue in fact involving the question of fraud were joined to the country, it would according to the established practice be determined by a jury; but even on the trial of an issue in fact, it is the peculiar province of the judge to interpret and expound to the jury the legal effect of any instrument of writing offered in evidence. If the instrument offered be impeached for fraud, or if from its face it was apparently against the provisions of the statute of frauds, it would be the duty of the Court to inform the jury whether the marks and badges of fraud apparent on the face of the instrument, were, or were not of themselves sufficient to avoid the deed.

But where an issue in law is joined, and the validity of a deed or other contract, is drawn in question by the state of pleadings for fraud or other cause, it is surely the province of the Court to declare the law arising on the facts presented by the pleadings, and if the deed on its face is obviously against the sense and spirit of the statute of frauds, or is void at Common Law; or if the conclusion of fraud natural-

ly flows from the facts of the case, the Court is clearly competent, and is bound to pronounce the deed fraudulent and void. And even admitting, that intention is of the essence of fraud, when the question is involved in an issue of law, the Court is competent and may infer the fraudulent intent, either from the face of the contract or from the facts of the case, if the marks of fraud be distinct and clear. In the case of a demurrer to evidence, to the pleading, or to the declaration, or in a case agreed, I know of no other legal rule by which the Court could be governed, and any other course which the Court might pursue, would be unlawful and erroneous.

The case before us is in the nature of a case stated or agreed, and it is our duty to pronounce the law arising on the facts contained in the answer of the garnishee.

The parties have made no issue in fact for a jury to try, but have submitted the law of the case to the judgment of the Court. Had the answer of the garnishee, or any material fact, been controverted on oath, the Court would then have ordered an issue in fact, to be tried by a jury.

As to the first proposition, that fraud consists in intention, and should in all cases be tried by a jury, I would be content to stop here with what I have already said; but it is due to the talent and character of the counsel, that I give some attention to the principal authorities by them commented on, in the argument, before I leave this branch of the subject.

Of the adjudications of this Court which were cited, the first in order was that of *Gayle, et al.* vs. *Singleton.* In that case the only principle settled, and which can have any bearing on the question in debate,

was, "that where property is sold by an administratrix, subject to a mortgage, and bought by herself at an inadequate price, and which mortgage is afterwards determined to have lost its lien in equity, the sale will be set aside." This principle has no direct application to the question before us. In my opinion it establishes nothing in favor or against the proposition attempted to be maintained.

The next is, the case of *Toulmin* vs. *Buckanan's ex'rs.* The opinion pronounced in that case, so far from recognising the maxim. "that no contract or instrument of writing, is in law fraudulent and void *per se,*" does in express words declare that fraud may be legally inferred from the face of the instrument, without proof *aliunde* of a fraudulent intent. It is there said, "that if a man in debt, equal to the value of his estate, make a gift of the whole of his property, the gift, in law, would be fraudulent and void, *per se*, as against creditors." The opinion fully recognizes the distinction between a fraud arising from the face of the instrument, and a fraud made out by proof *aliunde*, or in the language of some eminent Judges, the distinction between a fraud in law, and a fraud in fact.

The case of *Brannon* vs. *Oliver*, is to the same effect. The principle decided in that case was, "that a purchase made by an administratrix at her own sale, was not void *per se*, but was *prima facie* valid, if no unfairness appear." The entire opinion is predicated on the implied admission, that instances of fraud in law, are numerous, and *intimates* a determination, not to enlarge, but to restrict them within the bounds of reason and justice.

In the case of *Hobbs* vs. *Bibb*, the question grow-

ing out of the case presented, was whether posses-
sion of property remaining with the vendor after the
sale did of itself render the sale void in law ?    The
Court decided that it was not fraudulent and void of
itself, because the fact of possession might be ex-
plained by testimony, and the presumption of fraud
arising from that circumstance might be repelled, but
that it was a badge which in the absence of proof
would be presumptive of a fraud.

I admit that in the opinion pronounced, there is a
strong leaning against the distinction between a fraud
in law and a fraud in fact; yet it will be remembered
that the opinion contains the reasoning of the judge
who pronounced it, and not of the Court; that though
the Court may concur in the result of the opinion, it
is not to be understood that they adopt all the rea-
soning and *dicta* of the judge who gave the opinion :
they adopt so much only as necessarily leads to the
result.    To a decision of that case, it was not neces-
ry to destroy the distinction, or to enquire whether
there was any distinction, between a fraud in fact and
a fraud in law.    The question to be decided was
whether possession remaining with the vendor, was
a fraud *per se*.    Entertaining much respect for the
opinion of the Chief Justice, and acknowledging that
I was once inclined to the same opinion, in this par-
ticular I must now differ.

In the cases of *Murray* vs. *Riggs*, and *Austin* vs.
*Bell*, reported in the 15th and 20th of *Johnson*, and
so much relied on by the plaintiff in error, the prin-
ciple of a legal fraud, or fraud *per se*, to be inferred
from the face of the instrument, is emphatically and
fully recognised.

In one of the cases, *Thompson*, Chief Justice, expressly says, "Whenever the fraud, if it exists at all, is to be collected from the deeds themselves, it then becomes a question of fraud in law."–"that no moral turpitude is attached to this species of fraud ; or, if any, it is in a much less degree than where actual fraud, or fraud in fact, is imputable to the transaction."

In the other case, Chief Justice *Spencer* says,— "That a deed which does not fairly devote the property of a person overwhelmed in debt, to the payment of his creditors, but reserves a portion of it to himself, unless the creditors assent to such terms as he shall prescribe, is in law fraudulent and void." The case of *Leonard* vs. *Jackson & Cowan*, does not maintain a contrary doctrine. But on this branch of the subject, I deem it unnecessary to pursue the authorities any further, being fully convinced that the distinction between fraud in law and in fact is well sustained by reason and authority. The remaining inquiry is, whether from the facts presented by the pleadings, and contained in the answer of the garnishee, we are warranted in declaring the deed of trust to be fraudulent and void. The consideration of this question will necessarily embrace together the second and third propositions, and which is truly an important inquiry, at least to the parties interested in the event ; and as a precedent, in some degree settling the law, it may be important to the rights of many.

If we have bestowed upon the subject much labor and reflection, we have done no more than the duties of our station required of us. The subject was worthy of the most profound consideration.

That a debtor in failing circumstances, may by assignment of his estate in trust, and made in good faith, prefer one creditor to another, is too well settled to be now disputed. And that he may, with the assent of his creditors, reserve a portion of his property to himself, is a proposition equally plain. But whether he can make such a reservation at the expense of his creditors, and without their consent, is quite a different matter.

In the 2d of *Kent's Com.* 422, the Chancellor says, "that the debtor in such an assignment cannot make a reservation at the expense of his creditors, of any part of his property or income for his own benefit, and that modern authorities have given to such reservation the decided effect of rendering fraudulent and void the whole assignment. And no favored creditor or grantee can be permitted to avail himself of any advantage over other creditors under an assignment, which by means of such a reservation, is fraudulent on its face; and that if an insolvent debtor may make sweeping dispositions of his property to select and favorite creditors, yet loaded with durable and beneficial provisions for the debtor himself, and encumbered with onerous and arbitrary conditions, it would be impossible for Courts of Justice to uphold credit, or exact the punctual performance of contracts."

The case of *Murray* vs. *Riggs*, reported in 15 *Johnson* 571, was in some respects denied to be law, by the decision in the case of *Austin* vs. *Bell*, reported in the 20th of *Johnson* 442; and in the case of *McKie* vs. *Cairns*, reported in the 5th of *Cowen* 548, the doctrine is now settled in accordance with the views of Chancellor *Kent*.

In that case it was decided, "that an insolvent debtor might prefer some creditors to others, but could make no assignment of any part of his property in trust for himself, and that such assignment was void not only in part but *in toto*, both in law and equity, as being a fraud on creditors, and against the provisions of a positive statute.

The weight of modern authorities is clearly on the side of Chancellor *Kent*. They have been all examined and considered, and to my mind, none of them are sufficient to impeach the law as laid down by the Chancellor and settled by the decision in 5th *Cowen*.

This law is not only sustained by authority, but has reason and justice for its foundation.

It cannot comport with reason and justice, that a man, in failing circumstances and overwhelmed with debt, should be permitted to make large reservations of his property, to himself thereby diminishing the fund for the payment of his debts, without the consent of his creditors.

Such reservation must render the whole assignment fraudulent and void, as against the best policy of the law, and against the statute of frauds, being obviously made with intent to delay, hinder or defraud creditors of their just and legal actions.

To bring the case at bar, to the test of these rules and principles of law, it is fairly deducible from the answer of Richards, the garnishee, that Stowe the debtor was insolvent, because the assignment was of his whole estate, at least within the jurisdiction of this Court, and such occurrences seldom happen except in cases of men in failing or insolvent circumstances. The schedule annexed to the deed of trust, shews

that he was overwhelmed with debt, yet he has made a reservation of two thousand dollars per annum for his own benefit during the continuance of the trust, and which may continue for an indefinite period of time. It does not appear that the postponed creditors will ever receive a cent of the debtor's property, and Richards in his answer expressly states that Hazzard and other creditors were not provided for.

There is no evidence that any of the creditors except the trustee, has accepted the terms of the assignment, and Hazzard has expressed his dissent by instituting his action at law. From the whole face of the deed, the intent to hinder and delay creditors is manifest.

We are all of opinion that this is evidently the case of a man overwhelmed with debt and in failing or insolvent circumstances, making an attempt to place his property out of the pale of the law and beyond the reach of his creditors. That by reason of the reservation contained in the deed, it must be considered fraudulent and void as against the sound policy of law, and against the statute of frauds, being obviously made with intent to delay, hinder or defraud creditors of their just and legal actions.

We are unanimous in affirming the judgment of the Circuit Court.

LIPSCOMB, C. J. and SAFFOLD, J. and COLLIER, J. not sitting.